UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| TWD Corporation, an Arizona corporation f/k/a Tiros Corporation, an Arizona corporation<br><br>    Plaintiff,<br><br>v.<br><br>SPX Corporation, a Delaware corporation;<br><br>    Defendants. | Civil Action No. _5 - 2 6 3_<br><br><br>JURY TRIAL DEMANDED |

### Plaintiff TWD Corporation's Complaint Against SPX Corporation

Plaintiff TWD Corporation f/k/a Tiros Corporation (hereinafter "TWD"), for its Complaint against Defendant SPX Corporation ("SPX"), alleges as follows:

### JURISDICTION AND VENUE

1.  Plaintiff TWD is an Arizona corporation with its principal place of business in Scottsdale, Arizona and was formerly known as Tiros Corporation prior to the execution of the Asset Purchase Agreement that is the subject of this Complaint.

2.  Defendant SPX is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

3.  There is complete diversity among the parties and the amount in controversy between the parties is greater than $75,000.

4.  This Court has jurisdiction over the action pursuant to 28 U.S.C. §1332.

## II

## GENERAL ALLEGATIONS

5. TWD incorporates and realleges each of the allegations set forth in Paragraphs 1 through 4 as though fully set forth herein.

6. On June 25, 2004, SPX and TWD entered in an Asset Purchase Agreement (the "Agreement") whereby TWD agreed to sell substantially all of its assets to SPX in exchange for certain payments and the assumption of certain liabilities by SPX.

7. The Agreement was drafted by SPX's attorneys. Counsel for TWD proposed changes to the Agreement but all relevant drafts were created and modified by SPX's attorneys.

8. Paragraph 3.2 of the Agreement required SPX to make several payments to TWD and others involved in the Agreement totaling $2,000,000.

- Immediate payment of $92,571.67 to TACS Group, LLC
- Immediate payment of $15,408.65 to New Horizon Capital, LLC
- Immediate payment of $99,887.48 to Carlson Real Estate Company
- Immediate payment of $1,392,132.20 to Tiros

9. Paragraph 3.2(v) permitted SPX to retain $400,000, subject to offset (the "Holdback Amount"), to be paid to TWD pursuant to the provisions of Paragraph 9.7 of the Agreement.

10. Paragraph 9.7, in turn, requires SPX, absent a valid claim, to refund the entire $400,000 Holdback Amount to TWD one year from the Closing Date.

11. Payment of the $400,000 Holdback Amount, absent a valid claim, is therefore due in full on June 25, 2005.

12. Paragraph 3.3 of the Agreement required SPX to prepare and deliver a Closing Statement to TWD within 60 days of the Closing Date.

13. According to Paragraph 3.3, the Closing Statement was to be prepared by SPX "in accordance with GAAP applied in a manner consistent with Seller's and the Subsidiary's past practices . . . ."

14. Paragraph 3.3 of the Agreement further required the parties to adjust the purchase price if the Closing Statement submitted by SPX is unchallenged within 20 days of its submission or within twenty days of TWD challenging the accuracy of the Closing Statement.

15. SPX submitted the Closing Statement required by Paragraph 3.3 to TWD on August 24, 2004, fifty-nine days after the Closing Date. The Closing Statement submitted by SPX to TWD on August 24, 2004 alleged that TWD owed SPX $73,663. A copy of the Closing Statement is attached hereto as Exhibit A.

16. On August 30, 2004, six days after receiving the Closing Statement, Ricardo DeAvila contacted SPX in writing to dispute the Closing Statement submitted by SPX, to notify SPX of several problems with the Closing Statement, and to request further information.

17. Over the next several weeks, representatives of SPX and TWD communicated via email and telephone to address and evaluate TWD's dispute of the Closing Statement delivered by SPX. Representatives of both companies exchanged emails and telephone calls as well as proposed modifications to the Closing Statement.

18. On September 15, 2004, based upon the back and forth email and telephone communications between the parties, John Giordano, the chief financial officer of the Thermal Products Solutions division of SPX, sent an adjusted Closing Statement (the

"Adjusted Closing Statement"), via email, to Ricardo DeAvila. The Adjusted Closing Statement corrected the discrepancies and correctly concluded that SPX owed TWD $35,204.02. A copy of the Adjusted Closing Statement submitted by Mr. Giordano on September 15, 2004 is attached hereto as Exhibit B.

19. On September 16, 2004, Ricardo DeAvila responded to Mr. Giordano's email. He wrote to Mr. Giordano, "[T]he revised Closing Statement you delivered yesterday is agreeable to me. Please wire the $35,202.04 to our account below (please note it is to TWD Corp. since we needed to change all account names to exclude the Tiros name.) Let me know when to expect the funds."

20. SPX never wired TWD the $35,204.02 contemplated by the Adjusted Closing Statement delivered by SPX to TWD on September 15, 2004.

21. On November 1, 2004, approximately 45 days after the parties had agreed on the accuracy of the Adjusted Closing Statement, James Cauley of SPX, wrote to Ricardo DeAvila of TWD, and on behalf of SPX, denied knowledge of the Adjusted Closing Statement negotiated between TWD and SPX between August 24, 2004 and September 15, 2004 or that the parties agreed to the Adjusted Closing Statement delivered by SPX on September 15, 2004.

22. Mr. Cauley represented to Mr. DeAvila that he "was not aware of any September 15 agreement on an adjustment to the August 14 (sic), 2004 Final Closing Statement. It was my understanding that no revised agreement was reached on any adjustment."

23. Mr. Cauley's representations to Mr. DeAvila in his November 1, 2004 letter directly contradicted the actions, practices, communications and representations of SPX representatives between August 24, 2004 and September 16, 2004.

24. SPX now contends that it is not obligated to pay TWD the $35,204.02 contemplated by the agreed upon Adjusted Closing Statement. SPX further contends that the Agreement contains a typographical error and that the Holdback Amount is due in two equal annual installments and not in full one year from the Closing Date as stated in the Agreement.

## III

### COUNT I—BREACH OF CONTRACT

25. TWD incorporates and realleges each of the allegations set forth in Paragraphs 1 through 23 as though fully set forth herein.

26. The Agreement permitted TWD to object to the Closing Statement within 20 days of receiving it from SPX.

27. TWD complied with its obligations under the Agreement when it notified SPX that the Closing Statement was inaccurate on August 29, 2004.

28. SPX engaged in a course of conduct after receipt of TWD's August 29, 2004 notice that led TWD to justifiably believe that TWD had complied with its notice obligations and/or that SPX waived formal notice of a dispute.

29. SPX's exchange of emails, telephone calls and preparation and delivery of the Adjusted Closing Statement demonstrates that it deemed TWD's August 29, 2004 notice as compliant or that it waived formal notice of a dispute.

30. SPX's refusal to pay TWD the $35,204.22 owed to TWD under Paragraph 3.3 of the Agreement is a breach of Paragraphs 3.3(a) and (b) of the Agreement.

31. TWD has been damaged by SPX's breach of the Agreement in an amount to be proven at trial.

IV

## COUNT II—DECLARATORY JUDGMENT

32.   TWD incorporates and realleges the allegations set forth in Paragraphs 1 through 30 as though fully set forth herein.

33.   TWD seeks a Declaratory Judgment pursuant to 28 U.S.C. §2201, *et seq.* and/or 10 Delaware Code § 6501, *et seq.* regarding the interpretation of Paragraph 9.7 of the Agreement.

34.   TWD contends that Paragraph 9.7 of executed Agreement between the parties is accurate and that SPX, absent a valid claim, must refund the $400,000 Holdback Amount to TWD on June 25, 2005.

35.   SPX contends that there is a typographical error in Paragraph 9.7 of the Agreement and that the parties agreed that the Holdback Amount, absent a valid claim, would be due in two annual installments, one year and two years after the Closing Date.

36.   The language of the Agreement is precise. There is no legal or factual basis to support SPX's position that there is a typographical error in the Agreement or that SPX, absent a valid claim, may retain any portion of the Holdback Amount after June 25, 2005.

37.   SPX's counsel drafted the Agreement. Even if the Agreement were ambiguous, which it is not, under Delaware law, ambiguities in a contract should be construed against the drafter.

38.   TWD requests that the Court enter a Declaratory Judgment confirming that the language of the Agreement is accurate and that the entire Holdback Amount, absent a valid claim, must be refunded to TWD on June 25, 2005.

WHEREFORE, TWD having stated its claims against SPX prays that the Court:

A.  Award TWD all money owed to it pursuant to the agreed upon Adjusted Closing Statement;

B.  Award SPX nothing and finds that the Adjusted Closing Statement delivered by SPX on September 15, 2004 was the final accounting of the purchase price adjustments described in Paragraph 3.3 of the Agreement;

C.  Enter a declaratory judgment confirming the accuracy of Paragraph 9.7 of the Agreement;

D.  Award TWD its reasonable attorneys' fees;

E.  Award other relief as the Court deems just and proper;

DATED this 3rd day of May 2005.

Of counsel:
John D. Everroad
Fennemore Craig, P.C.
3003 North Central Avenue
Suite 2600
Phoenix, Arizona 85012-2913

By _____
William M. Kelleher (DE #3961)
BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
12th Floor
919 North Market Street
Wilmington, DE  19801-3034

*Attorneys for Plaintiff TWD Corporation*